IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Deonta Jerome Hicks<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:16cv189 (CMH/IDD) |
| Wendall W. Pixley, et al.,<br>Defendants. | )<br>)<br>)<br>) | |

## MEMORANDUM OPINION

Deonta Jerome Hicks, a Virginia inmate proceeding pro se, has filed a civil rights action alleging violations of his religious rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), see 42 U.S.C. § 2000cc-2, and the First Amendment, see 42 U.S.C. § 1983. The defendants filed a Second Renewed Motion for Summary Judgment, supported by a legal memorandum in which they incorporate by reference a previously filed supporting affidavit with exhibits (entitled "enclosures"). [Dkt. Nos. 47-1, 71-72]. Plaintiff received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 73]. Plaintiff filed a response, supported by an affidavit, opposing the defendants' motion. [Dkt. Nos. 77-78]. This matter is therefore ripe for adjudication. For the reasons stated below, the defendants' Second Renewed Motion for Summary Judgment will be granted as to both First Amendment claims and to the RLUIPA claim contained in Count 6 of plaintiff's Amended Complaint [Dkt. No. 10], the remainder of plaintiff's RLUIPA claims will be dismissed as moot, and this action will be dismissed.

When Hicks filed this lawsuit, he was incarcerated at Sussex II State Prison (SIISP). Although he has since transferred facilities, all of his claims stem from activities that occurred while incarcerated at SIISP. He brings six claims under RLUIPA. He alleges that (1) he could

not pray in the recreation pod individually or as part of a group; (2) he could not attend religious services while housed in the Structured Living Unit (SLU); (3) he was denied visitation on Islamic holidays; (4) he could not roll up his pants above his ankles; (5) he could not wear a kufi (an Islamic head covering) everywhere within the prison; and (6) he was denied a request to obtain a thaub (an Islamic prayer robe). He also brings two claims under the First Amendment. First, he alleges that from April 1, 2013, through August 1, 2016, the Virginia Department of Corrections (VDOC) had a policy prohibiting inmates from growing a partial, one-quarter inch beard. Second, he reiterates his claim that he was unable to obtain a thaub. He claims that these two actions have interfered with his ability to practice Islam.

## I. Background

Hicks's RLUIPA and First Amendment claims stem from VDOC rules of general applicability as well as SIISP-specific practices. The general applicability policies are part of VDOC Operating Procedure (OP) related to grooming, property, recreation, housing, and visitation. Additionally, the current warden, Tracy Ray, has submitted an affidavit attesting to those policies and their implementation at SIISP. [Dkt. No. 47-1]. The facts outlined below are undisputed except as noted otherwise.

Hicks first points to OP 864.1, which governs grooming standards. [Ray Aff. Enclosure D]. Before August 1, 2016, the policy required beards to "cover the entire facial hair area." [Ray Aff. ¶ 12; Ray Aff. Enclosure D]. If an inmate could not grow a beard covering the entire facial-hair area, the beard was prohibited as a partial beard. [Ray Aff. ¶ 12]. Hicks declares that when this policy was in place, he was required to maintain a shaved face because he could not grow facial hair throughout his entire facial-hair area. [Hicks Aff. ¶¶ 15-16]. That policy was amended effective August 1, 2016 to allow one-quarter inch beards that cover "those areas in which the

2

offender is able to grow facial hair," so long as no shapes or designs are cut into the beard. (Ray Aff. ¶ 12; Ray Aff. Enclosure D). The current policy, effective November 7, 2017, allows one-half inch beards. [Ray Aff. ¶ 13].

Other relevant VDOC policies govern offender property, including personal and religious clothing. Ray attests that rules governing inmate attire are implemented to prevent inmates from affiliating with gangs or from concealing weapons and other contraband. [Ray Aff. ¶ 15]. OP 802.1 requires all personal clothing to be purchased through the commissary. [Ray Aff. Enclosure E]. Further, clothes must "fit properly as determined by facility staff." [Ray Aff. Enclosure E]. As a result, SIISP did not allow Hicks to roll up his pants above his ankles. [Ray Aff. ¶ 15]. Additionally, OP 841.3 explicitly lists particular faith objects inmates may purchase and keep as personal property. [Ray Aff. Enclosure A]. Kufis are on this list but are subject to the same facility-specific restrictions as other non-religious head coverings. (Ray Aff. ¶ 6; Ray Aff. Enclosure A]. Accordingly, at SIISP kufis (like other head coverings) may be worn during outside recreation (where they are subject to search) but not in other specified areas unless the inmate is participating in an authorized religious program. [Ray Aff. ¶ 6]. Thaubs, however, are not on the list of permitted religious property. [Ray Aff. Enclosure A]. For objects not explicitly listed, inmates may request to obtain a particular item. [Ray Aff. ¶ 16]. The VDOC Faith Review Committee denied Hicks's request for a thaub based on security concerns. [Ray Aff. ¶ 16; Ray Aff. Enclosure F].

Concerning prayer, Ray attests that, for security reasons, inmates may not gather in small groups during pod recreation, thus preventing group prayer. [Ray Aff. ¶ 7]. Instead, inmates are permitted to gather for religious services in supervised, designated areas. [Ray Aff. ¶ 7]. Ray further declares that security reasons underlie Hicks's inability to use his prayer mat for

individual prayer during pod recreation. [Ray Aff. ¶ 7]. Otherwise, Ray says, during pod recreation Hicks is permitted to pray individually, in an upright position, without his mat. [Ray Aff. ¶ 7]. Hicks disputes Ray's statement about group gatherings during pod recreation, attesting that inmates frequently convene to play games and watch television. [Hicks Aff. ¶ 5].

Hicks also points to OP 841.7, the rules for the SLU—a housing unit for "offenders whose behavior indicates a need for a more structured living environment than provided in General Population."[1] [Ray Aff. Enclosure B]. Ray attests that these rules prohibit those housed in the SLU from mingling with general population inmates. [Ray Aff. ¶ 9]. As a result, Ray says, when Hicks was housed in the SLU, he could not attend religious services outside of that housing unit. [Ray Aff. ¶¶ 8-9]. Ray further attests that OP 841.7 allows SLU inmates to request religious counseling and visitation from the institutional chaplain. [Ray Aff. ¶ 9]. Hicks disputes that there was a rule prohibiting SLU inmates from mingling with inmates housed in general population. [Hicks Aff. ¶ 10].

Finally, OP 851.1 governs visiting privileges. [Ray Aff. Enclosure C]. Visitation for general population inmates is Saturdays, Sundays, and all state-recognized holidays. [Ray Aff. Enclosure C]. Virginia does not recognize Islamic holidays as state holidays. [Ray Aff. ¶ 10]. But OP 851.1 allows inmates to request special visits from members of the clergy. [Ray Aff. Enclosure C].

## II. Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] Hicks was intermittently housed in the SIISP SLU up until it closed on February 1, 2016. (Ray Aff. ¶ 8).

4

law." FED. R. CIV. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted).

### III. Analysis

### A. RLUIPA Claims

After Hicks was transferred out of SIISP, the Court asked the parties to address whether his RLUIPA claims for injunctive and declaratory relief had become moot.[2] [Dkt. No. 60]. The defendants contend that the RLUIPA claims are moot because Hicks challenges only SIISP-specific incidents involving the facility's implementation of VDOC policy.

Federal courts lose jurisdiction over a case when it becomes moot. Williams v. Ozmint, 716 F.3d 801, 809 (4th Cir. 2013). "A case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" Id. (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). Generally, when an inmate is transferred to a new facility, the transfer moots any claims seeking injunctive or declaratory relief related to prison policies at the former institution. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir 2009). This is so because "the newly situated inmate . . . is free of the policy or practice that provoked the lawsuit in the first place." Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007).

All of Hicks's RLUIPA claims are moot but for the thaub claim. Hicks contends that his RLUIPA claims remain justiciable because they challenge VDOC policies applicable to all penal institutions within the state, thus rendering his transfer inconsequential to the outcome of the

---

[2] To the extent Hicks seeks monetary damages for his RLUIPA claims, the Fourth Circuit does not recognize such relief under RLUIPA. See Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014); Rendelman v. Rouse, 569 F.3d 182, 184 (4th Cir. 2009).

5

lawsuit. But even viewing the evidence in the light most favorable to Hicks, as the nonmoving party, see Small v. Welldyne, Inc., 927 F.3d 169, 173 (4th Cir. 2019), his RLUIPA claims cannot fairly be categorized as facial challenges to VDOC policy. Rather, except for the thaub claim, Hicks's five other RLUIPA claims rest on SIISP's *implementation* of particular VDOC policies. Accordingly, because Hicks is no longer incarcerated at SIISP, those five RLUIPA claims for injunctive and declaratory relief are moot. See Incumaa, 507 F.3d at 282-83 (determining that First Amendment claims based on rules in particular housing unit became moot after inmate transferred to different housing unit); Dove v. Patuxent Facility, No. 18-1847, 2019 WL 2373425, at *4 n.4 (D. Md. June 5, 2019) (unpublished) (concluding that RLUIPA claims based on practices at plaintiff's former penal institution were moot).

Hick's claim challenging his inability to obtain and wear a thaub is not moot but, nevertheless, cannot not survive summary judgment. The evidence shows that Hicks's request was denied by the VDOC Faith Review Committee. [Ray Aff. Enclosure F]. The Faith Review Committee does not appear to operate within or be exclusive to SIISP. Rather, according to OP 841.3, it is a group "comprised of [V]DOC employees appointed by the Chief of Corrections Operations." [Ray Aff. Enclosure A]. Accordingly, Hicks's claim may be redressed by injunctive relief directed at the Faith Review Committee and, thus, is not moot. This revelation, however, dooms Hicks's claim on the merits. Hicks did not name as a defendant any member of the Faith Review Committee who played a role in denying his request. Thus, by directing his claim at the Director of the VDOC, the Chief of Corrections, and SIISP's former warden, Hicks appears to be attempting to impose liability on the named defendants based on a theory of supervisory liability, and he may not do so in this action. See Lovelace v. Lee, 472 F.3d 174, 193 (4th Cir. 2006) (dismissing claim against prison employee who was not involved in issuing challenged policy).

Hicks has not submitted any evidence to establish that any named defendant's conduct meets the necessary elements for supervisory liability to attach. Namely, Hicks has not put forth any evidence to show

> (1) [a supervisory official] knew that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) [the supervisor's] response showed deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between [the supervisor's] inaction and the constitutional injury.

See King v. Rubenstein, 825 F.3d 206, 224 (4th Cir. 2016) (internal quotation marks and citation omitted).

## B. First Amendment Claims

Hicks brings two claims under the First Amendment. First, he claims that the defendants partial beard policy violated his right to free exercise of religion from April 1, 2013 through August 1, 2016. During that period, the VDOC permitted inmates to grow one-quarter inch beards, but only if the beard covered the inmate's entire facial-hair area. No partial beards were permitted, even if the inmate was physically unable to grow a beard covering the entire facial-hair area. As a result of this policy, Hicks asserts that he was required to maintain a shaved face despite his sincerely held religious beliefs demanding otherwise. Second, he claims that his inability to obtain and wear a thaub also interfered with his ability to practice Islam.

"The First Amendment's protection of the right to exercise religious beliefs extends to all citizens, including inmates." Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015). Still, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); Jehovah, 798 F.3d at 176. To determine reasonableness, courts consider the factors set forth in Turner v. Safley, 482 U.S. 78 (1987): (1) whether the regulation is logically connected to a

7

legitimate governmental interest; (2) whether the inmate has alternative means of exercising his or her religion; (3) the impact of accommodating the inmate's right on other inmates, prison officials, and prison resources; and (4) the availability of "obvious, easy alternatives." 482 U.S. at 89-91; see also Lovelace, 472 F.3d at 200.

**i. Partial Beard Policy**

The defendants contend that they are entitled to qualified immunity on Hicks's claim about the VDOC's former ban on partial beards. In response Hicks asserts that Couch v. Jabe, 679 F.3d 197 (4th Cir. 2012), establishes a federally protected right for Muslim inmates to grow beards. True enough, in Couch the Fourth Circuit concluded that the VDOC's grooming policy banning beards entirely substantially burdened the plaintiff's religious exercise under RLUIPA. 679 F.3d at 200-01. But that is of no moment here because RLUIPA and First Amendment claims are analyzed under different frameworks. See Holt v. Hobbs, 135 S. Ct. 853, 862 (2015) (concluding that district court erred by conflating First Amendment and RLUIPA analyses).

Under the First Amendment, however, the defendants are entitled to qualified immunity. "The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." Hupp v Cook, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citation omitted). Because the Fourth Circuit and the district courts within it have upheld similar grooming policies under the First Amendment, it cannot be said that a reasonable officer would have been on notice that the ban on partial beards clearly violated the free exercise clause. See Hines v. S.C. Dep't of Corr., 148 F.3d 353, 356-58 (4th Cir. 1998) (holding that South Carolina prison grooming policy banning beards does not violate free exercise clause); Braithwaite v. Hinkle, 752 F. Supp. 2d 692, 694-97 (E.D. Va. 2010) (rejecting

8

First Amendment challenge to earlier version of VDOC grooming policy that banned beards); Ragland v. Angelone, 420 F. Supp. 2d 507, 509, 511-12 (W.D. Va. 2006) (same); DeBlasio v. Johnson, 128 F. Supp. 2d 315, 322-23 (E.D. Va. 2000) (same).

### ii. Thaub

The defendants argue that prohibiting Hicks from wearing a thaub does not violate the First Amendment because the decision is reasonably related to penological interests in security. They assert that a thaub could be used to hide contraband or to identify with particular gangs.

At this stage, the burden is on Hicks to demonstrate that the challenged prison rule is not reasonably related to a legitimate penological interest under Turner, see Overton v. Bazzetta, 539 U.S. 126, 132 (2003), and he has failed to do so. Hicks principally takes umbrage with the prison's safety justification for denying his request for a thaub. He argues that contraband could be hidden just as easily in other authorized personal clothing available for purchase through the prison commissary. But courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id. And, indeed, there is a rational connection between the legitimate penological concern of prison security and banning clothing in which an inmate could conceal contraband. See Jehovah, 798 F.3d at 178 ("[I]nmates' safety and health is a legitimate concern."). Moreover, Hicks has presented no evidence or argument concerning the remaining Turner factors. Accordingly, the defendants are entitled to summary judgment on Hicks's First Amendment claim with respect to the thaub.

## III. Conclusion

For the reasons outlined above, the defendants' Second Renewed Motion for Summary Judgment [Dkt. No. 71] will be granted as to the First Amendment claims and to the RLUIPA claim with respect to obtaining a thaub, the remainder of plaintiff's RLUIPA claims will be dismissed as moot, and this action will be dismissed through an Order that will issue alongside this Memorandum Opinion.[3]

Entered this 20th day of Sept. 2019.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia

---

[3] Hicks also filed a motion titled "Petition for Writ of Mandamus," which the Court construes as a Motion for Default Judgment. [Dkt. No. 79]. In it, Hicks reiterates the argument he made in a previously filed Motion for Default Judgment [Dkt. No. 69], which this Court denied in an Order dated April 2, 2019 [Dkt. No. 76]. In particular, he argues that default judgment is warranted because the defendants missed a Court-ordered deadline for filing their Second Renewed Motion for Summary Judgment. But for good cause shown, this Court granted the defendants' Motion for Enlargement of Time [Dkt. No. 74] in the same order in which the Court denied plaintiff's first Motion for Default Judgment [Dkt. No. 76]. Thus, because the defendants' Second Renewed Motion for Summary Judgment was deemed timely filed by the Court, there is no ground to grant Hicks's renewed request for default judgment.